**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDREW OCEAN,

Plaintiff,

v. Case No. 3:25-cv-988-MMH-SJH

ROBERT A. HARDWICK, in his official capacity as Sheriff of St. Johns County,

Defendant.

---

# ORDER

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss (Doc. 23; Motion), filed April 3, 2026. In the Motion, Sheriff Robert Hardwick (Sheriff Hardwick) requests that the Court dismiss Plaintiff Andrew Ocean's Amended Complaint for Damages and Demand for Jury Trial (Doc. 18; Amended Complaint), filed March 13, 2026, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). Ocean timely filed a response to the Motion. See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 26; Response), filed April 30, 2026. Accordingly, this matter is ripe for review.

## I. Background

The FBI notified all Jacksonville-area synagogues that neo-Nazi groups were organizing a "National Shabbat of Hate" to occur on February 25, 2023. Amended Complaint ¶ 11. Out of concern for his congregation, Rabbi Kurinsky of Chabad at the Beaches asked Andrew Ocean, a certified pistol instructor, to provide private security services for Rabbi Kurinsky's synagogue on that day, and Ocean agreed.[1] Id. ¶¶ 10, 12.

On February 25, 2023, the St. Johns County Sheriff's Office (SJSO) learned that a man was standing outside of Chabad at the Beaches with a gun. Id. ¶ 13. In response, SJSO deployed a SWAT team to the synagogue. Id. ¶ 15. Seeing the SWAT team approaching, Ocean, who was standing outside of the synagogue with a pistol and a shotgun that he legally possessed, placed one of his weapons in his vehicle. Id. ¶¶ 14, 16. When the SWAT team members arrived, they pointed their rifles at Ocean, ordered him to drop his weapon and lay down on the ground, and announced that they would shoot him if he failed to comply. Id. ¶¶ 17–18. Ocean complied, and the SWAT team handcuffed him as he lay face-down in the synagogue's driveway. Id. ¶ 19. The SWAT team searched Ocean and confiscated a holstered handgun as well as a handgun that Ocean told them he had in his pocket. Id. ¶ 20. During the search, Ocean told

[1] Ocean does not provide the Rabbi's first name, so the Court will refer to him or her as "Rabbi Kurinsky."

the SWAT team that he was a member of the congregation providing private security for the synagogue. Id. ¶ 21. In response, the SWAT team interrupted the congregation's worship service to ask Rabbi Kurinsky to confirm Ocean's identity and his "story." Id. ¶¶ 21–22. Although Rabbi Kurinsky identified Ocean and asked for his immediate release, the SWAT team continued to detain Ocean lying face-down on the pavement for an additional twenty minutes. Id. ¶¶ 23–24.

Ocean initiated this action on August 28, 2025, by filing his Complaint for Damages and Demand for Jury Trial. See Complaint (Doc. 1). In the operative Amended Complaint (Doc. 18), Ocean brings two claims. In Count I, he asserts a claim against Sheriff Hardwick in his official capacity under 42 U.S.C. § 1983 for "Unlawful Detainment." Id. at 5-6. And in Count II, he asserts a claim against Sheriff Hardwick in his official capacity under a theory of municipal liability pursuant to Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) for failure to train the SJSO deputies. Id. 6–8. Sheriff Hardwick filed this Motion seeking dismissal of the Amended Complaint on April 3, 2026. See generally Motion.

## II. Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see

also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal[]") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678-79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III. Summary of the Arguments

In the Motion, Sheriff Hardwick argues that the Court should dismiss the claim in Count I of the Amended Complaint because “the only basis of liability which Plaintiff appears to assert is under respondeat superior,” and courts have rejected this as a basis for liability under § 1983. Motion at 4–7. Ocean does not address this argument. See generally Response. With respect to Count II, Sheriff Hardwick contends that the Court should dismiss it because Ocean does not allege sufficient facts to state a claim under Monell. Motion at 6–10. Ocean responds that he has stated a Monell claim for failure to train SJSO SWAT deputies because he alleges that SJSO detained him for an additional twenty minutes after Rabbi Kurinsky confirmed his identity. Response at 5. According to Ocean, the fact that the deputies acted inappropriately shows that there was a “lack of training that resulted in a foreseeable constitutional deprivation. Id. at 4-5. The Court will address each of Sheriff Hardwick’s arguments in turn.

## IV. Discussion

### A. Count I: 42 U.S.C. § 1983 Unlawful Detainment against Sheriff Hardwick in his official capacity

Sheriff Hardwick seeks dismissal of the claim in Count I because Ocean asserts the claim based upon a theory of respondeat superior, which the Supreme Court has rejected. Motion at 4-7. Notably, in the Response, rather than oppose dismissal of Count I, Ocean states his intent to voluntarily dismiss the "unlawful detainment" claim in Count I under Rule 41(a). Response at 1 n.1. But an attempt to dismiss this single claim against a defendant in this manner rather than all claims is ineffective. Indeed, it is well-established in the Eleventh Circuit that a party can dismiss only an entire action against a party under Rule 41(a), not an individual claim. Rosell v. VMSB, LLC, 67 F.4th 1141, 1144 (11th Cir. 2023). Regardless, the claim in Count I is due to be dismissed as entirely duplicative of the claim in Count II.

"'For liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents.'" Vineyard v. Cnty. of Murray, Ga., 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (citation omitted), cert. denied, 510 U.S. 1024 (1993). Therefore, Ocean's claim against Sheriff Hardwick in his official capacity is a municipal liability claim. Indeed, by naming Sheriff Hardwick, in his official capacity in Count I, Ocean is simply pleading a claim of municipal liability (against the

government entity he represents – the county) for the actions of the deputies. Cook, 402 F.3d at 1115. But in Count II, Ocean specifically pleads that very same claim of municipal liability. As such, to the extent Sheriff Hardwick, in his official capacity, is named as a Defendant in Count I, this claim is redundant of the claim in Count II, and therefore, due to be dismissed.

**B. Count II: 42 U.S.C. § 1983 Failure to Train**

**1. Applicable Law**

A municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693–94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal

liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986)). A municipality will rarely have an officially adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the [municipality] may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390. However, failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389. Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City

of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); see also Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021). The Eleventh Circuit has repeatedly held that “without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise.” Gold, 151 F.3d at 1351. Indeed, “the need for such training must be plainly obvious to [a municipality’s] decisionmakers,” such as where there is “evidence of a history of widespread prior abuse.” Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990); see also Rocker v. City of Ocala, 355 F. App’x 312, 314 (11th Cir. 2009) (per curiam).[2] Notably, the Supreme Court, in dictum, has left open the possibility that in some instances “a need to train could be ‘so obvious,’” that a municipality could be held liable even without a pattern of prior constitutional violations. Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390). As an example, the Supreme Court pointed to the need to train officers in the use of deadly force where the officers are provided firearms. See City of Canton, 489 U.S. at 390 n.10. Thus, a claimant’s allegations of a failure to train can support municipal liability only when “the municipality inadequately trains . . . its employees, this failure to train . . . is a [municipal] policy, and that [municipal] policy causes the employees to violate a citizen’s

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 (“Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.”).

constitutional rights." Gold, 151 F.3d at 1350 (citing City of Canton, 489 U.S. at 389-91).

**2. Analysis**

Here, Ocean alleges that SJSO SWAT deputies violated his Fourth Amendment rights by detaining him for an additional twenty minutes after Rabbi Kurinsky identified him and corroborated his statement explaining why he was positioned outside the synagogue with firearms. Amended Complaint ¶¶ 30, 37–38. Sheriff Hardwick does not contend that SJSO SWAT deputies did not violate Ocean's Fourth Amendment rights. See generally Motion. Instead, he asserts that Ocean has failed to plead factual allegations plausibly stating a claim of municipal liability. See id. at 8-9.

In his Amended Complaint, Ocean maintains that Sheriff Hardwick inadequately trained SJSO SWAT deputies in the general area of "proper deployment and tactics in conducting a SWAT operation," Amended Complaint ¶ 36, but he does not identify any specific training deficiency. Instead, Ocean alleges that inadequate training can be "plausibly infer[red]" from the incident itself and contends, on "information and belief" that Sheriff Hardwick acknowledged the deputies' actions as inappropriate. Id. ¶ 37. Further, Ocean also argues that Sheriff Hardwick was deliberately indifferent to this alleged need for training because the "failure to train [SJSO] deputies evidences deliberate indifference," Id. ¶ 40, and the need for training is "clearly obvious

in light of the evolving state of the law in Florida with regard to gun possession and carry." Id. ¶ 39. In support, Ocean cites language from the Supreme Court's decision in Canton acknowledging that a claimant could assert a claim for municipal liability without a pattern of constitutional violations under certain circumstances. Response at 4. Therefore, Ocean appears to argue that Sheriff Hardwick was deliberately indifferent to the need for training because the need to train SJSO SWAT deputies was "so obvious" that alleging a pattern of prior constitutional violations is not required. Id. (citing City of Canton, 489 U.S. at 389-390).[3]

Upon review, the Court concludes that Ocean fails to state a claim of municipal liability under Monell because he does not allege sufficient facts supporting an inference that there was a specific need to train SJSO SWAT deputies, or that Sheriff Hardwick was deliberately indifferent to this need for training. The Court will assume, for the purposes of this decision only, that SJSO SWAT deputies violated Ocean's Fourth Amendment rights by detaining him or extending his detention. See, e.g., Yates v. Cobb Cty. Sch. Dist., 687 F. App'x. 866, 873 (11th Cir. 2017). But this single occasion of wrongdoing fails to support an inference of a need for training. See City of Canton, 489 U.S. at 391

[3] In the Amended Complaint, Ocean also alleges that Sheriff Hardwick's failure to train in "proper deployment and tactics" is what caused SJSO SWAT deputies to violate his Fourth Amendment rights. Amended Complaint ¶¶ 38–39. But this vague and entirely conclusory allegation, devoid of any factual content or context, is not entitled to any presumption of truth and is due to be disregarded. Iqbal, 556 U.S. at 678-79.

("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."); City of Okla. City v. Tuttle, 471 U.S. 808, 821 (1985) (plurality opinion) (noting that a trial court's jury instruction allowing an inference of inadequate training from a single use of excessive force was unwarranted).

As the Supreme Court has noted, "a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," Connick v. Thompson, 563 U.S. 51, 62 (2011) (citing Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)). Here, Ocean does not allege that SJSO SWAT deputies have a pattern of any constitutional violations. See generally Amended Complaint. Instead, he relies on the narrow exception left open in Canton that the need for training could be "so obvious" that a claimant can assert municipal liability without a pattern of constitutional violations. City of Canton, 489 U.S. at 390. But Ocean does not allege facts supporting an inference that he can satisfy this narrow exception. Ocean's assertion that the need for training is "clearly obvious in light of the evolving state of the law in Florida with regard to gun possession and carry," Amended Complaint ¶ 39, is far too vague and conclusory to demonstrate an obvious need for training. Significantly, Ocean does not identify any facts suggesting a need for training with regard to "gun possession and carry" laws or of any alleged changes in those laws that would

necessitate specific training. See generally Amended Complaint. And, Ocean fails to present any argument in the Response supporting a need for training in this area as a matter of law or any identification of the purported changes in the law, nor does he explain how these changes in law created an obvious need for training. See Response at 4-5. On these barebones allegations, and absent any supporting factual assertions or argument from Ocean, the Court does not find this case to represent the rare circumstance where "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations. Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390). As a result, the Court concludes that Ocean has failed to plausibly allege that Sheriff Hardwick was deliberately indifferent to a need to train SJSO SWAT deputies. Consequently, the Court concludes that Ocean fails to allege facts supporting an inference that a municipal policy or custom of failing to train SJSO SWAT deputies caused his Fourth Amendment rights to be violated.

Because Ocean does not assert sufficient factual allegations in the Amended Complaint for the Court to infer that Sheriff Hardwick had a policy or custom of failing to train SJSO SWAT deputies, and that this policy or custom violated Ocean's Fourth Amendment rights, Ocean has failed to allege sufficient facts to support a Monell claim. Accordingly, Count II is due to be dismissed.

## V. Conclusion

The Court concludes that the Motion is due to be granted and the Amended Complaint is due to be dismissed. The Court dismisses Count I both because Ocean abandoned the claim by failing to respond to the Motion and because it is redundant of the claim in Count II. And the Court dismisses Count II because Ocean fails to plead sufficient factual allegations to state a plausible Monell claim of municipal liability against Sheriff Hardwick in his official capacity.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 23) is **GRANTED.**
2. The Amended Complaint for Damages and Demand for Jury Trial (Doc. 18) is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court is **DIRECTED** to enter judgment, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of October, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

i67

Copies to:

Counsel of Record